# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-CV-965

ANTHONY MILLS,

     Plaintiff,

v.

TOWN OF LASALLE, COLORADO, a municipality,
CITY OF GREELEY, COLORADO, a municipality,
WELD COUNTY SHERIFF'S OFFICE, a municipality,
DAVID MILLER, LaSalle Police Officer, in his individual capacity,
DEPUTY DECKER, Weld County Sheriff's Deputy, in his individual capacity,
OFFICER JOHNSON, Garden City Police Officer, in his individual capacity,
OFFICER TIENES, Kersey Police Officer, in his individual capacity,
OFFICER CANTOR, Greeley Police Officer, in his individual capacity,
OFFICER OTTO, Greeley Police Officer, in his individual capacity,
OFFICER CORLES, Greeley Police Officer, in his individual capacity, and
CHIEF CARL HARVEY, Town of LaSalle Police Chief, in his individual and official
     capacities,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

     Plaintiff Anthony Mills, by and through his attorney Sarah Schielke The Life &

Liberty Law Office, respectfully alleges for his *Complaint and Jury Demand* as follows:

## I.  INTRODUCTION

1.  This is an action for damages and other relief against the Defendants pursuant to 42

     U.S.C. § 1983.

2.  On April 8, 2018, Defendant officers of the Greeley Police Department, LaSalle Police Department, and Weld County Sheriff's Department violated Plaintiff's constitutional rights under the Fourth, Fourteenth and First Amendments to the U.S. Constitution.

3.  Plaintiff Mr. Mills, a member of the Hells Angels motorcycle club, was riding his motorcycle home from a restaurant with a friend when Defendant LaSalle Police officer David Miller – recognizing from their attire that they were Hells Angels members – decided he would pull them over to harass and terrorize them.

4.  Officer Miller, like the other named defendant officers in this case, greatly disliked those associated with the Hells Angels motorcycle club and was eager to personally participate in all of Northern Colorado law enforcement's continued harassment and intimidation of members in this group.

5.  Knowing his intent was unlawful, Officer Miller attempted to mute his body-worn camera for the interaction, in violation of his office's own written policies. However, unbeknownst to him, he was unsuccessful in doing so. As a result, all the Defendants' unlawful behavior was recorded by Officer Miller's body-worn camera and can be viewed in the attached **Exhibits 1-3** (conventionally submitted to Court via CD).

6.  Officer Miller and the other on-scene Defendant officers then began loudly discussing how they were going to hold Mr. Mills and his friend for as long as they wanted ("I have no problem holding these mother fuckers until Greeley gets down here"), their agreement that they would engage in this unlawful conduct because Plaintiff appeared associated with the Hells Angels ("I'm good, I mean, we get to fuck with HA") and

threatening to tase or kill Plaintiff if he moved ("**I'm shooting him! I need some paid vacation!**").

7. The Defendant Officers unlawfully seized and terrorized Plaintiff for over an hour. All Defendant officers on scene materially participated in this unlawful extended seizure in violation of the Fourth Amendment and throughout also violated their duty to intervene to stop Defendant Officer Miller, and one another, from ceasing this terrifying abuse of police power.

8. The actions of the Defendant Officers were part of the custom, practice and training at all the Defendant law enforcement agencies to harass, intimidate, unlawfully seize, and regularly violate the civil rights of any member or associate of the Hells Angels motorcycle club.

9. The Defendants' actions caused Plaintiff Mr. Mills to endure pain, suffering, humiliation, emotional distress, attorneys fees, and other damages in an amount to be determined at trial.

## II. JURISDICTION AND VENUE

10. This action arises under the Constitution and laws of the United States and the State of Colorado, including Article III, section 1 of the United States Constitution and Title 42 U.S.C. § 1983.

11. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 1343(a)(3).

12. This Court has authority to grant the declaratory relief requested herein pursuant to 28 U.S.C. § 2201.

13. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

14. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado or were directed at individuals within the State of Colorado.

### III. PARTIES

15. Plaintiff Anthony Mills is a citizen of the United States and was at all times relevant to the claims set forth herein, a resident of and domiciled in the State of Colorado. He now resides in Cheyenne, Wyoming.

16. Defendant David Miller is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the Town of LaSalle in LaSalle, Colorado. At all times relevant hereto Defendant Miller was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Miller is a named Defendant in his individual capacity.

17. Defendant Deputy Decker is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police deputy for the Weld County Sheriff's Office in Weld County, Colorado. At all times relevant hereto Defendant Deputy Decker was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the

United States of America. Deputy Decker is a named Defendant in his individual capacity.

18. Defendant Officer Johnson is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the Town of Garden City in Garden City, Colorado. At all times relevant hereto Defendant Johnson was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Johnson is a named Defendant in his individual capacity.

19. Defendant Officer Tienes is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the Town of Kersey in Kersey, Colorado. At all times relevant hereto Defendant Officer Tienes was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Tienes is a named Defendant in his individual capacity.

20. Defendant Officer Cantor is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Greeley in Greeley, Colorado. At all times relevant hereto Defendant Officer Cantor was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Cantor is a named Defendant in his individual capacity.

21. Defendant Officer Otto is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Greeley in Greeley, Colorado. At all times relevant hereto Defendant Officer Otto was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Otto is a named Defendant in his individual capacity.

22. Defendant Officer Corles is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Greeley in Greeley, Colorado. At all times relevant hereto Defendant Officer Corles was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Colorado and the Constitution and laws of the United States of America. Officer Corles is a named Defendant in his individual capacity.

23. Defendant Town of LaSalle, Colorado is a municipality for purposes of § 1983 liability.

24. Defendant City of Greeley, Colorado is a municipality for purposes of § 1983 liability.

25. Defendant Weld County Sheriff's Office is a municipality for purposes of § 1983 liability.

26. Defendant Chief Carl Harvey is an individual the chief of police for the Town of LaSalle's police department. He sets policy for the Town of LaSalle's police department and is responsible for supervising and training LaSalle's police officers, to include Defendant David Miller.

## IV. FACTUAL ALLEGATIONS

27. On April 8, 2018, at approximately 8:00 pm, Plaintiff Anthony Mills and his friend
    Theodore Simpson were each on their motorcycles driving home from a restaurant
    where they had had dinner in Greeley. They were driving south on Highway 85 in
    LaSalle, Colorado.

28. Defendant Officer David Miller, who was on patrol driving in the other direction, saw
    the motorcyclists and recognized them to be individuals who supported or were
    members of the Hells Angels motorcycle club. They wore distinctive clothing easily
    identifying them as such.

29. Although Officer Miller had observed Plaintiff and Mr. Simpson violate no laws, he
    flipped a U-turn, sped after them, turned on his overhead red and blue lights, and did
    an interagency callout requesting that dozens of officers respond to a traffic stop for
    (Miller claimed) merely committing the traffic infraction of speeding.

30. This "pull them over whenever you see them to harass them" attitude towards anyone
    who associated with the Hells Angels Motorcycle Club was (and remains) an ongoing
    custom and practice among officers at all the Defendant law enforcement agencies,
    condoned and repeated for the sole purpose of harassing, intimidating and threatening
    those who associate with the Hells Angels Motorcycle Club. Upon information and
    belief, both Weld County Sheriff's Office and Greeley Police Department provide
    training to law enforcement in Colorado (to include but not limited to the named

Defendants) explicitly condoning and directing that officers harass and unlawfully detain, search and seize anyone associated with the Hells Angels motorcycle club.

31. Upon information and belief, Defendant Town of LaSalle and its police department (directed by Defendant Chief Harvey) also has a custom among its officers of harassing and violating the civil rights of those associated with the Hells Angels motorcycle club, and also of turning off body-worn camera while conducting such illegal activities.

32. At least a half dozen officers immediately responded to the scene of Officer Miller's traffic stop. All the patrol cars activated their spotlights, headlights, and overhead lights to completely blind the compliant Plaintiff Mr. Mills and Mr. Simpson.

33. Officer Miller and Defendant Weld County Sheriff's Deputy Decker first walked up to Plaintiff Mr. Mills and Mr. Simpson, and ordered them to put their hands in the air. They complied. The officers then surrounded and ordered them to shut off their bikes. They complied. Officer Miller then ordered them to put their kickstands down and get off their bikes. They complied.

34. Officer Miller then demanded that Mr. Mills and Mr. Simpson produce their licenses, registration and insurance. Both supplied the requested documents immediately.

35. Officer Miller then demanded to know whether Mr. Mills or Mr. Simpson had any weapons on them. They had Leatherman knives and told the officers so. Officer Miller demanded that they hand over their knives to him. They complied.

36. Officer Miller then kept asking if they had any other weapons anywhere else. Mr. Simpson told him that he had a pistol in the closed saddlebag on his motorcycle. Officer

Miller admitted that Mr. Simpson's possession of that firearm was apparently lawful. Officer Miller then ordered both Mr. Mills and Mr. Simpson to stay put under the watch of the other officers who had surrounded them. They did so.

37. Officer Miller returned to his patrol car where he loudly conversed with the several other police officers on scene. They joked about how the "warmer weather brings out" Hells Angels members and Officer Miller said (regarding Mr. Simpson) "let's see if he's got any felony convictions" so they could "get him for the firearm." He requested multiple agencies run background checks on Mr. Simpson in the hope he might find a felony conviction. Officer Miller had no articulable reason to believe Mr. Simpson had a felony conviction (in fact, neither Plaintiff nor Mr. Simpson had any meaningful criminal history) but he decided to detain both Mr. Mills and Mr. Simpson longer so that he could pursue this fishing expedition.

38. Both Plaintiff Mr. Mills and Mr. Simpson's driving privileges came back valid, they were cleared for warrants, and neither had any felonies. Disappointed, but not deterred, Officer Miller continued loudly chatting with the other officers on scene from behind the blinding lights they had on Plaintiff and Mr. Simpson, continuing their detention of the riders. Another officer reminded Officer Miller to start writing the speeding ticket he was going to write to justify stopping the motorcyclists. Officer Miller did so. Meanwhile, both Plaintiff Mr. Mills and Mr. Simpson continued standing next to their bikes, completely blinded by the officers' lights, unable to see what was going on, growing increasingly terrified of what the officers' intended to do to them.

39. As Officer Miller was finishing writing the speeding ticket to Plaintiff Mr. Mills, he heard over the radio that there had been an alleged assault at a Tilted Kilt in Greeley that possibly involved members of a "motorcycle gang." Officer Miller excitedly provided Mr. Mills' and Mr. Simpson's physical descriptions over the radio to see if they matched anyone who was suspected involved in the Tilted Kilt bar fight.

40. There was no match between the descriptions provided on each side of the call but it was the custom and practice of these police agencies to harass and detain citizens associated with the Hells Angels for as long as possible regardless of whether there was justification to do so. The officers on scene then loudly discussed that they would not let Mr. Mills or Mr. Simpson go until Greeley drove a witness from the Tilted Kilt all the way down to their location to do a drive-by identification. Officer Miller laughed and announced "I have no problem holding these mother fuckers until Greeley gets down here." The other officers all laughed and said "Oh yeah!"

41. Over the next 30 minutes, the officers stood around Officer Miller's patrol car laughing about indefinitely detaining Mr. Mills and Mr. Simpson. Officer Miller made repeated jokes about how long he was taking to write the speeding tickets, at one point announcing to the group "Looky there, I got one summons done," to much laughter. Throughout all of this, Plaintiff Mr. Mills remained frozen and blinded by the officers' lights, only able to hear them and unable to see what they were doing or what was happening around him. To subject Plaintiff to this continued state of terror and helplessness was the clear and express intent of all Defendant officers on scene.

42. One officer brought up during this extended seizure that Greeley PD probably wouldn't even drive all the way down there with their witness to do a drive-by, since it was way too far and they couldn't hold Mr. Mills and Mr. Simpson for that long. Officer Miller responded: "Oh fuck yes they are (coming down here)." The other officer responded "When? After we cut them loose?" And Officer Miller replied: "Oh no, I told them we're holding them here until they get here; get your ass down here." Another officer in the group then noted, "so, in a couple hours then" and everyone laughed, noting they "didn't have anything else to do."

43. An officer then made a joke that he had some "online training" he needed to get done "before May 1." Everyone again laughed and Officer Miller stated "I'm good, I mean, **we get to fuck with HA**." Again the group of Defendant Officers laughed and openly agreed that this was their conspiratorial purpose.

44. "HA" stands for Hells Angels and is a common short-form used by law enforcement to reference them.

45. The officers then began discussing various features of Mr. Mills' motorcycle with one another, all within earshot of Mr. Mills. Mr. Mills, who was gravely concerned for his safety and well-being, remained silent, still, and terrified. He knew that Defendant Officer Miller had declared the stop at the outset to be for a speeding ticket, but now over 25 minutes into the seizure being held without explanation and lit up by over a half dozen patrol cars' lights, it was patently clear that nothing happening at that point had anything to do with traffic enforcement.

46. Finally, around 30 minutes into the Defendant Officers' stop of the motorcyclists, dispatch notified that three Greeley PD officers were en route to their location with a witness to take a look at Mr. Mills and Mr. Simpson to see if he recognized either of them as being involved in the fight at the Tilted Kilt. Officer Miller responded to the other officers over the radio: "Copy that, we'll keep em here."

47. Upon information and belief, the Defendant Officers who were actually on scene and participating in the unlawful detention of Plaintiff up to this point included (but may not be limited to) Defendant Officer Miller, Defendant Officer Johnson, Defendant Officer Tienes and Deputy Decker.

48. While waiting, these officers then began sharing stories with one another of violent things they had done to motorcyclists and members of motorcycle clubs. They continued to do this all right in front of Mr. Mills and Mr. Simpson for the purpose of terrifying them further. The topic then turned to various motorcyclists the officers had tased or attempted to tase with a taser gun. One officer described how he had "almost tazed a guy off a motorcycle" while the motorcycle was in motion and had a passenger riding on it, again to much laughter.

49. One of the officers then announced "well, if either one of [Mr. Mills or Mr. Simpson] gets it, it's the tall dude!" To which Officer Miller then yelled, "**hell, I'm shooting him! I need some paid vacation!**" All the officers laughed and laughed. They continued to discuss how it would definitely be the "tall" motorcyclist (Mr. Mills) that they'd shoot first. Mr. Mills' terror reached a horrifying apex. He knew that if he moved

at all, he clearly would be killed. Shaking, he tried to maintain perfect stillness so as to not give them the excuse they were trying to fabricate to murder him.

50. Thirty-two minutes into the stop, Officer Miller admitted to another officer that he had finished his deliberately meandering effort at writing a speeding ticket for Mr. Mills. Despite having finished writing that ticket, however, he continued his seizure of Mr. Mills without warrant or other lawful justification.

51. Forty-five minutes into the stop, Officer Miller ordered Mr. Mills to remove his helmet so that the witness that Greeley PD had brought to the seen could look at his face. All of the Greeley officers (Officers Cantor, Otto and Corles) then proceeded to try and make Plaintiff Mr. Mills and Mr. Simpson stand in a through lane of traffic for the drive-by identification. Mr. Mills objected to this, and both he and Mr. Simpson pointed out that the officers were putting them in harm's way. The Defendant Officers responded: "Are you refusing a police order?" and continued to insist they stand in a through lane of traffic. As Mr. Mills and Mr. Simpson – with no other choice – began to comply by walking where the officers directed, a car went by and nearly hit them. The Defendant officers laughed. Plaintiff Mr. Mills' terror, panic and fear for his life only escalated further.

52. The witness brought by the Greeley officers stated that he did not recognized either Mr. Mills or Mr. Simpson as involved in the barfight in Greeley and the officers on scene then laughed with one another about how unsurprised they were to hear that. They knew that the Tilted Kilt barfight suspect they were looking for had long hair (which neither

Mr. Mills or Mr. Simpson did) and that the Tilted Kilt suspect had been caught on video and identified (by name) by on-scene witnesses at the Tilted Kilt anyway.

53. One Defendant Greeley PD officer on scene then announced to the group that he was going to try and interrogate Plaintiff Mr. Mills while Officer Miller and the other officers continued their unlawful detention of him. The Greeley PD officer added that he was "sure [Mills] is going to tell me to fuck off" and then asked the group – "No one has any bodycams, right?" To which Officer Miller responded, "**We do, but they're off.**" He then told the Greeley PD officer to go do whatever questioning he wanted to do of Plaintiff and that he would hold off on serving Plaintiff the completed speeding ticket until the Greeley officer had done whatever he wanted to do with Mr. Mills first.

54. Officer Miller then resumed laughing with the other officers about how he was going to have Mr. Simpson's motorcycle towed and impounded. Throughout these rounds of insults and discriminatory comments all of the officers continually used terms like "fucking bikers," "freaking bikers," and loudly agreed with one another that "bikers' ladies" were not good-looking, and probably "short and fat."

55. Officer Miller next bragged to the 7-8+ officers on scene that Mr. Simpson was going to be "riding bitch" because he was impounding his bike, and "not only that, now I get to go through his whole bike, bags, and everything."

56. While this sizable congregation of Northern Colorado's law enforcement officers continued their harassment and intimidation of Plaintiff and Mr. Simpson, dispatch called out to Officer Miller the need for his assistance on a different and unrelated call

in LaSalle nearby. Officer Miller, still eager to go through Mr. Simpson's bags and bike, actually refused it, and asked two other officers to go "handle it."  After they reluctantly agreed to do so, Officer Miller and another unknown Defendant officer resumed sharing their eagerness to go through Mr. Simpson's bags. The Defendant officer added, "When you find something in his bag, I wanna see it," and Officer Miller replied, "Oh, I will. I will. I will share that with you"

57. After the drive-by witness left, Officer Miller and the other Defendant officers continued loudly antagonizing and harassing Mr. Mills and Mr. Simpson.. Officer Miller said "look at that little prospect, and I'm going to fucking inventory the shit out of his bike!" He openly encouraged the remaining Defendant officers to hang around for the "fun."

58. Finally, nearly an hour after stopping and seizing him, Officer Miller gave Plaintiff Mr. Mills a speeding ticket and permitted him to leave. Despite all the harassment, threats and intimidation that Officer Miller and his cohorts had committed over the preceding hour, and naturally due to his understandable continued fear for his life, Mr. Mills remained courteous and respectful. He signed where directed on the summons and said "Thank you sir."

59. Mr. Mills then drove home, shaking and in shock, utterly traumatized by what these officers had done to him. Mr. Mills was no stranger to near-constant harassment from law enforcement previous to this, but this was the first time he had been subjected to a

death threat and watched multiple officers from multiple jurisdictions laugh about how eager they were to shoot him if he made one wrong move. It made him sick.

60. Plaintiff felt so unsafe, depressed and threatened by the Defendant officers' actions that he decided he had to move to another state. Waking up and trying to work and live in his Colorado community knowing that these law enforcement agencies were openly conspiring to kill him at the first opportunity (and get paid vacation time for it to boot) made life for Mr. Mills stressful, terrifying and unbearable. As soon as he was financially able to do so, he moved to Wyoming. His job as a foreman remained in LaSalle, however, so Mr. Mills has had to be continually subject to fear of being killed by police as he drives to and from work every day.

61. Plaintiff had difficulty sleeping and eating in the months that followed this event, feeling constantly anxious and fearful that law enforcement might come to hurt or kill him at any moment. The strain this permanent state of fear and anxiety put on Mr. Mills caused his relationship with his fiancé to fall apart. Mr. Mills was simply unable to be emotionally available to his then-future wife because he was consumed with trying to cope with the knowledge that the police would not protect him if needed and in fact would happily kill him and cover it up at the first opportunity they found, solely because of his exercising his constitutional right to associate with the Hells Angels motorcycle club.

62. Plaintiff was injured financially through, inter alia, lost future income/employment opportunities and the cost of having to move to another state as a result of the Defendants' unlawful conduct.

63. Plaintiff experienced psychological pain, trauma, stress and suffering as a result of the Defendants' unlawful conduct and violations of his civil rights.

64. Plaintiff also suffered personal humiliation, mental anguish, and associated losses by virtue of the unlawful actions of these Defendants as set forth herein, for which he is entitled to compensation.

65. Plaintiff seeks appropriate relief at law and equity, including compensatory damages and declaratory and injunctive relief.

66. Defendant Town of LaSalle as a custom, practice and policy, did in this case, and in the past, violate the First, Fourth and Fourteenth Amendment rights of Plaintiff and others based upon their association with the Hells Angels Motorcycle Club in violation of the United States Constitution. Defendant Chief Harvey as the chief of police for the Town of LaSalle, failed to adequately train and supervise his officers in terms of respecting the constitutional rights of Plaintiff and others similarly situated.

67. Defendant Greeley Police Department, as a custom, practice and policy, did in this case, and in the past, violate the First, Fourth and Fourteenth Amendment rights of Plaintiff and others based upon their association with the Hells Angels Motorcycle Club in violation of the United States Constitution.

68. Defendant Weld County Sheriff's Office, as a custom, practice and policy, did in this case, and in the past, violate the First, Fourth and Fourteenth Amendment rights of Plaintiff and others based upon their association with the Hells Angels Motorcycle Club in violation of the United States Constitution.

69. Upon information and belief, the Town of Greeley's police department and the Weld County Sheriff's Office provide regional and state-wide training to all the Defendant officers regarding how to violate the constitutional rights of individuals like Plaintiff (specifically, any members or associates of the Hells Angels motorcycle club) and get away with it, and in which a code of conduct is set where the officers understand that neither their fellow officers nor their superiors will ever punish them for violating the civil rights of this group (Hells Angels associates) in particular.

70. All of the Defendant officers' actions as described herein were taken under color of state law.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 – 4th Amendment Violation – (Unlawful Seizure)*
(against all Defendants)

71. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

72. Plaintiff Mr. Mills had a constitutionally protected right to be secure in his person against unreasonable seizures.

73. Defendants unlawfully seized Plaintiff by means of physical force and show of authority and restrained him of his freedom.

74. Defendants did not have probable cause or other lawful justification to detain Plaintiff for over an hour, yet Plaintiff was ordered by Defendants to stay on scene, to not move, and told he would be shot if he moved, all while blinded by multiple police car spotlights.

75. Defendants' actions, as described above, were objectively unreasonable in light of the facts and circumstances confronting them. The Defendant Officers' intent in this violation of Plaintiff's constitutional rights was openly stated and agreed to by all the officers repeatedly throughout the encounter, evidencing that this civil rights violation was also part of a conspiracy to violate Plaintiff's civil rights.

76. It was the custom, policy and practice of LaSalle and its police department to harass, threaten, and intimidate anyone who appeared to be associated with the Hells Angels motorcycle club in this way.

77. It was the custom, policy and practice of both other named Defendant law enforcement agencies to harass, threaten, and intimidate anyone who appeared to be associated with the Hells Angels motorcycle club in this way.

78. It was the custom, policy and practice among all the named Defendant law enforcement agencies to violate each agency's written policies regarding body-worn cameras when committing civil rights violations upon Hells Angels members or associates, in order to cover up the repeated abuses of power.

79. The Defendants' seizure and their loudly announced threat to murder Plaintiff to get some "paid vacation time" caused Plaintiff to experience terror and fear for his life. His experience of this event caused and continues to cause Mr. Mills trauma and emotional distress, and he suffered injuries in an amount to be proven at trial.

80. As a direct and proximate cause and consequence of Defendant LaSalle's, Greeley's, Weld County's and Chief Harvey's policies, training and customs as described above, the individual Defendant officers all felt both emboldened and authorized to violate Plaintiff's civil rights in the manner described.

## SECOND CLAIM FOR RELIEF
### *42 U.S.C. § 1983 – First, Fourth and Fourteenth Amendment Violations –*
### *Unlawful Seizure, Substantive Due Process Violation, Retaliation for Association*
(against all Defendants)

81. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

82. Defendants' actions, as described above, deprived Plaintiff of liberty and property without due process of law.

83. Plaintiff has a First Amendment right to associate as a member of the Hells Angels motorcycle club.

84. The actions of Defendants in violating the Fourth Amendment rights of Plaintiff was based upon and in retaliation for Plaintiff's exercising of his First Amendment right to associate with the Hells Angels motorcycle club.

85. The actions of the Defendants were designed to provoke, intimidate and chill a person of ordinary firmness from associating with the Hells Angels motorcycle club and to

punish Plaintiff for his membership in that club, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

86. The Defendants' yelling at Plaintiff that if he moved wrong he would get shot, and the officers' raucous agreement of their desire to kill him for "paid vacation time" was behavior that shocks the conscience. It is consistent with an attitude that begets likely constant civil right violations inflicted by the Defendant officers on Plaintiff and other members of the Hells Angels club. It reveals that the officers are willing to kill Hells Angels members for sport, and by discussing it aloud and in front of Plaintiff, it clearly and unmistakeably communicates an understanding among law enforcement that they will not intervene to stop one another from such constitutional violations; and that to the contrary, they will aid one another in covering up such constitutional violations.

87. No reasonable citizen similarly situated to Plaintiff could have experienced what he experienced from these Defendants on April 8, 2018 without thereafter being forever traumatized and changed for the worse.

88. As a direct and proximate cause and consequence of Defendants' unlawful conduct as described above, Plaintiff suffered injuries in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
*42 U.S.C. § 1983 – 4th Amendment Violation – False Arrest/Imprisonment (Arrest Without Warrant or Probable Cause)*
(against all Defendants)

89. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

90. The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Mr. Mills of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to be free from unlawful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983, in that Mr. Mills was held in custody and seized for an unreasonable amount of time solely to be threatened and harassed.

91. Defendants knew that Mr. Mills had committed no arrestable offense, that they possessed no probable cause for any criminal offense, and they held him for over an hour anyway, not just with deliberate indifference to Mr. Mills' rights under the Fourth Amendment to the U.S. Constitution, but with actual malice for his constitutional rights as a citizen in general.

92. Defendant Miller, with the support of his fellow officers and knowing authorization from his Chief, happily and loudly failed to timely write a speeding ticket for Plaintiff for the express purpose of aiding the Defendant group's violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

93. Defendants' conduct proximately caused injuries, damages, and losses to Mr. Mills.

**FOURTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Violation of Fourteenth Amendment (Due Process)/Fourth Amendment – Failure to Intervene*
(against Defendants Miller, Decker, Johnson, Tienes, Cantor, Otto and Corles)

94. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

95. Each of the 7 named Defendant officers participated in and provided material aid for their conspiracy to violate Plaintiff's constitutional rights solely because of his membership in the Hells Angels motorcycle club. However, to the extent (if any) that any particular Defendant Officer might claim to have not materially participated in the violation itself, that Officer nevertheless also had numerous extended realistic opportunities during this 1+ hour violation of Plaintiff's right to intervene in and stop the others.

96. All of the named Defendant officers were attendant to their radios and openly discussed with one another that they intended to unreasonably seize Plaintiff (and possibly kill him if he moved in any way they could fabricate to be justification later) and detain him without probable cause or a warrant so that it was very obvious to all named Defendant officers and amply understood among all named Defendant officers that what they were doing was illegal. None of the named Defendant officers, despite this knowledge, reacted by calling a supervisor to put an end to it, or by telling their fellow Defendants that their unlawful mistreatment of Plaintiff must stop. Instead, the Defendant Officers made sure to double-check with one another that everyone's body-worn cameras were deactivated so that no one would be able to prove what they had done.

97. All the named Defendant officers had the ability and opportunity to stop the constitutional violations inflicted upon Plaintiff, and as such, they each had an affirmative duty to intervene and do so.

98. All defendant officers knew, or had reason to know, that the other defendant officers' actions with regard to Mr. Mills as set forth herein were plain and deliberate violations of Mr. Mills' civil rights.

99. The seven Defendant officers' failure to intervene to stop the ongoing unlawful seizure and threats made upon Mr. Mills's life proximately caused and contributed to Plaintiff's injuries, damages and losses in an amount to be determined by a jury at trial.

**FIFTH CLAIM FOR RELIEF**
*42 U.S.C. § 1983 – Failure to Train and Supervise*
(against Defendants Chief Harvey, Town of LaSalle, City of Greeley, and Weld County Sheriff's Office)

100.   Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

101.   Defendants LaSalle, Greeley and Weld County Sheriff were, at all times relevant to the subject matter of this litigation, municipal corporations subject to suit pursuant to 42 U.S.C. § 1983.

102.   Defendant Chief Harvey not only supervised David Miller's participation in this action but also subsequently directly ratified his unlawful actions.

103.   Defendants LaSalle, Greeley, Weld County Sheriff and Chief Harvey developed and maintained policies, procedures, customs and practices exhibiting or resulting in a deliberate indifference to the constitutional rights of persons like Plaintiff, which proximately caused the violations of Plaintiff's constitutional rights as set forth herein.

104.    Defendants maintained policies, procedures, customs and practices that explicitly authorized unlawful seizures by its officers of any individual who appeared to be associated with the Hells Angels motorcycle club.

105.    Defendants were aware of the training they and others gave to their officers which condoned and shielded from accountability the civil rights violations their officers would commit upon citizens like Plaintiff as set forth in this Complaint.

106.    Defendants knew or should have known that this training (or lack thereof) was almost certain to result in the First, Fourth and Fourteenth Amendment violations committed by the seven named Defendant Officers in this Complaint.

107.    If any training was given to the Defendant officers regarding the rights of Plaintiffs, Defendants knew that the training was either reckless or grossly negligent (if not openly willful and knowing) and that the misconduct alleged herein was certain to occur.

108.    Defendants had a statutorily imposed duty to protect the constitutional rights of the members of the public from violations of those rights by members of the LaSalle, Greeley, and Weld County police departments. By failing to properly train or supervise such officers the above-named Defendants violated Plaintiff's constitutional rights.

109.    As a direct and proximate cause and consequence of Defendants' failure to train and supervise, Plaintiffs suffered injuries, damages and losses as set forth above.

### SIXTH CLAIM FOR RELIEF
***42 U.S.C. § 1983 – Violation of First Amendment – Policy/Custom of Retaliation for Exercise of First Amendment***
(against Defendants Chief Harvey, Town of LaSalle, City of Greeley, and Weld County Sheriff's Office)

110.   Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

111.   Plaintiff has a First Amendment right to associate as a member of the Hells Angels Motorcycle Club.

112.   The actions of the seven Defendant officers named herein in violating Plaintiff's Fourth and Fourteenth Amendment rights was the direct result of Defendant Harvey's, LaSalle's, Greeley's and Weld County's policy and custom of authorizing its officers and one another to trample the constitutional rights of any citizen associated with the Hells Angels motorcycle group, and to do whatever necessary to cover-up those violations thereafter.

113.   Defendants Chief Harvey, LaSalle, Greeley and Weld County Sheriff all knew that citizens like Plaintiff have a First Amendment right to associate as a member of the Hells Angels motorcycle club but out of their own gang mentality and animus towards Hells Angels, these Defendants unlawfully condoned and encouraged an unconstitutional policy, custom and practice of violating the constitutional rights of individuals like Plaintiff in retaliation for having the audacity to exercise their First Amendment right to associate with members of the Hells Angels Motorcycle Club and to express and share that association in public.

114.   The actions of Defendants were designed to provoke, intimidate and chill a person of ordinary firmness from associating with the Hells Angels Motorcycle Club and to

punish Plaintiff for his membership in that club in violation of the First, Fourth and Fourteenth Amendments to the U.S. Constitution.

115.   It is clearly established that an act taken by law enforcement in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983.

116.   Defendants Chief Harvey, LaSalle, Greeley and Weld County all knew that the foreseeable result of their agencies' custom/practice/policy of encouraging and facilitating officers' violations of citizens' constitutional rights would be the repeated violation of citizens' (like Plaintiff's, here) constitutional rights. Despite that knowledge, they maintained and continued to condone such unlawful and unconstitutional policies/practices/customs.

117.   As a direct and proximate cause and consequence of Defendants' unlawful conduct as described above, Plaintiff suffered injuries in an amount to be proven at trial.

## VI.PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mr. Mills respectfully requests that this Court enter judgment in his favor and against the Defendants and grant:

a.   Appropriate declaratory and other injunctive and/or equitable relief;

b.   Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c.   All economic losses on all claims allowed by law;

d.  Punitive damages on all claims allowed by law and in an amount to be determined at trial;

e.  Attorneys' fees and the costs associated with this action on all claims allowed by law;

f.  Pre- and post-judgment interest at the lawful rate; and

g.  Any further relief that this Court deems just and proper, and any other relief as allowed by law.

## VII. REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial to a jury on all issues so triable.

Respectfully submitted this 6th day of April, 2020.

THE LIFE & LIBERTY LAW OFFICE

*s/ Sarah Schielke*
Sarah Schielke
Counsel for Plaintiff
The Life & Liberty Law Office LLC
1209 Cleveland Avenue
Loveland, CO 80537
P: (970) 493-1980
F: (970) 797-4008
E: sarah@lifeandlibertylaw.com